**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SAFAA AL-ZERJAWI, | ) | Case No. 5:21-CV-02182-BYP |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| WARDEN TIM McCONAHAY | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I.    INTRODUCTION

Petitioner, Safaa Al-Zerjawi ("Mr. Al-Zerjawi"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Al-Zerjawi was sentenced to 17 years in prison for attempted murder, kidnapping, felonious assault, abduction, having weapons while under disability, domestic violence, and violating a protective order.

Mr. Al-Zerjawi asserts two grounds for relief. Respondent, Warden Tim McConahay ("Warden"), filed an answer/return of writ on January 18, 2022. (ECF No. 6). Mr. Al-Zerjawi filed a traverse on April 21, 2022. (ECF No. 14). The Warden filed a reply to Mr. Al-Zerjawi's traverse on April 28, 2022. (ECF No. 15).

This matter was referred to me on September 2, 2022 under Local Rule 72.2 to prepare a report and recommendation on Mr. Al-Zerjawi's petition. (*See* ECF non-document entry dated September 2, 2022). For the reasons set forth below, I recommend that Mr. Al-Zerjawi's petition be DISMISSED and/or DENIED. I further recommend that the Court not grant Mr. Al-Zerjawi a certificate of appealability.

## II.  RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings

of fact are presumed correct and can be contravened only if the habeas petitioner shows, by

clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C.

§ 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d

524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by

a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio

Court of Appeals for the Ninth Appellate District summarized the facts as follows:

> {¶2}  In 2007, Mr. Al-Zerjawi pleaded guilty to numerous offenses, including two counts of attempted murder that were each accompanied by a firearm specification. The trial court's sentencing order, which was journalized on February 8, 2007, sentenced Mr. Al-Zerjawi on counts one and two "for a definite period of Five (5) Years on two counts, which are not a mandatory term pursuant to [R.C.] 2929.13(F), 2929.14(D)(3), or 2925.01, for punishment of the crime of ATTEMPTED MURDER[.]" The trial court also sentenced him to mandatory seven-year prison terms for each of the accompanying firearm specifications. Explaining how Mr. Al-Zerjawi's prison terms would be served, the trial court wrote:

>> IT IS FURTHER ORDERED that the 7-years mandatory sentence imposed in this case for the FIREARM SPECIFICATION ONE TO COUNT ONE be served CONSECUTIVELY and not concurrently with sentences imposed in Counts 1 and 2.

>> IT IS FURTHER ORDERED that the sentence imposed in Counts 1, 5, 7, 8, 9, 10, 11, and 14 be served CONCURRENTLY and not consecutively with each other.

> Mr. Al-Zerjawi did not file a direct appeal.

> {¶3} On February 18, 2015, Mr. Al-Zerjawi filed a motion for judicial release. By that time, a successor judge had taken the bench. The trial court denied Mr. Al-Zerjawi's motion on March 19, 2015. Shortly thereafter, the trial court sua sponte "amended" the sentencing order by adding the following language: "IT IS FURTHER ORDERED that the sentences imposed in Counts 1 and 2 be served CONSECUTIVELY and not concurrently with each other, for a total prison term of 17 years." Mr. Al-Zerjawi moved the trial court to vacate the amended order on October 17, 2019, arguing that the amendment was not a nunc pro tunc correction and, consequently, that the trial court lacked jurisdiction to modify his sentence. Another successor judge had taken the bench by the time Mr. Al-Zerjawi filed that motion. On February 10, 2020, the

trial court denied the motion to vacate, concluding that the amended order "reflected the true action of the [c]ourt and was not a modification."

(ECF No. 6-1, Exhibit 34); *State v. Al-Zerjawi*, Nos. 29681 and 29682, 2021 WL 2694946, 2021-Ohio-2237 (9th Dist. June 30, 2021).

## III.  PROCEDURAL HISTORY

### A.  <u>State Court Conviction</u>

On August 8, 2006, Mr. Al-Zerjawi was indicted in the Summit County Court of Common Pleas on: (1) two first-degree felony counts of attempted murder in violation of R.C. §§ 2903.02 and 2903.02(A); (2) two first-degree felony counts of felonious assault in violation of R.C. § 2903.11(A)(2); (3) one first-degree felony count of kidnapping in violation of R.C. §§ 2905.01(A)(1), 2905.01(A)(2), 2905.01(A)(3), and 2905.01(A)(5); (4) one first-degree felony count of kidnapping in violation of R.C. §§ 2905.01(A)(1), 2905.01(A)(2), and 2905.01(A)(3); (5) one second-degree felony count of felonious assault in violation of R.C. § 2903.11(A)(2); (6) one third-degree felony count of abduction in violation of R.C. § 2905.02(A)(2); (7) one third-degree felony count of having weapons under disability in violation of R.C. §§ 2923.13(A)(1), 2923.13(A)(2), and 2923.13(A)(4); (8) two first-degree misdemeanor counts of domestic violence in violation of R.C. § 2919.25(A); and (9) two fourth-degree misdemeanor counts of domestic violence in violation of R.C. § 2919.25(C). (ECF No. 6-1, Exhibit 1). The attempted murder, first-degree felonious assault, and one of the kidnapping charges also carried firearm specifications. *Id*. On August 9, 2006, Mr. Al-Zerjawi pled not guilty to the charges. (ECF No. 6-1, Exhibit 2).

On September 5, 2006, a supplemental indictment was issued, charging Mr. Al-Zerjawi with four additional firearm specifications under R.C. § 2941.1412 and one first-degree misdemeanor count of violating a protection order in violation of R.C. § 2919.27.

(ECF No. 6-1, Exhibit 3). On September 6, 2006, Mr. Al-Zerjawi pled not guilty to the additional charges. *Id*.

On October 27, 2006, Mr. Al-Zerjawi, through counsel, entered a plea of not guilty by reason of insanity. (ECF No. 6-1, Exhibit 4). Mr. Al -Zerjawi also requested a competency evaluation. *Id*. On December 12, 2006, the trial court ordered Mr. Al-Zerjawi to undergo a competency evaluation. (ECF No. 6-1, Exhibit 7).

On February 5, 2007, the trial court found that Mr. Al-Zerjawi was competent to stand trial. (ECF No. 6-1, Exhibit 9). On the same date, Mr. Al-Zerjawi withdrew his plea of not guilty and pled guilty to two counts of attempted murder with firearm specifications, one count of kidnapping with a firearm specification, one count of felonious assault, one count of abduction, one count of having weapons while under disability, two counts of domestic violence, and one count of violating a protection order. *Id*. The remaining charges were dismissed. *Id*.

On the same day, the trial court conducted a sentencing hearing. The court merged the three firearm specifications and sentenced Mr. Al-Zerjawi to seven years on the firearm specification to Count One. *Id*. The court also sentenced Mr. Al-Zerjawi to five years on each of the attempted murder counts (Counts One and Two); three years on the kidnapping charge (Count Five); five years on the felonious assault charge (Count Seven); one year on the abduction charge (Count Eight); three years on the having weapons while under disability charge (Count Nine); six months on each of the domestic violence charges (Counts Ten and Eleven); and six months on the violating a protection order charge (Count Fourteen). *Id*. The court ordered that Mr. Al-Zerjawi would serve his sentence for the firearm specification consecutively to his sentences for Counts One and Two (attempted murder). The court further

ordered that Mr. Al-Zerjawi would serve his sentences on Counts One (attempted murder), Five (kidnapping), Seven (felonious assault), Eight (abduction), Nine (having weapons while under disability), Ten and Eleven (domestic violence), and Fourteen (violating a protection order) concurrently to each other. *Id*. The sentencing order did not expressly state whether Mr. Al-Zerjawi would serve his sentences on the two attempted murder charges consecutively or concurrently to each other and did not specify what Mr. Al-Zerjawi's total sentence was. *Id*. Mr. Al-Zerjawi did not appeal from the trial court's imposition of his sentence.

On August 19, 2014, Mr. Al-Zerjawi, acting *pro se*, filed a motion for judicial release. (ECF No. 6-1, Exhibit 10). On August 28, 2014, a successor trial judge denied Mr. Al-Zerjawi's motion. (ECF No. 6-1, Exhibit 11). On February 18, 2015, Mr. Al-Zerjawi, again acting *pro se*, filed another motion for judicial release. (ECF No. 6-1, Exhibit 13). On March 18, 2015, the trial court again denied Mr. Al-Zerjawi's motion. (ECF No. 6-1, Exhibit 14).

On April 10, 2015, the trial court, acting *sua sponte*, issued a journal entry amending the original February 5, 2007 sentencing order *nunc pro tunc*. (ECF No. 6-1, Exhibit 12). The amendment provided that Mr. Al-Zerjawi would serve his sentences for the two counts of attempted murder consecutively to each other, for a total prison sentence of 17 years. *Id*.

On October 17, 2019, Mr. Al-Zerjawi, acting *pro se*, filed a motion to vacate the April 10, 2015 *nunc pro tunc* entry, arguing that the trial court lacked the authority to add five years to Mr. Al-Zerjawi's sentence after it had already been imposed. (ECF No. 6-1, Exhibit 15). On February 10, 2020, another successor trial judge (the third to oversee the proceedings) denied Mr. Al-Zerjawi's motion, holding that the April 2015 amendment merely corrected a clerical error in the original sentencing order, "reflected the true action of the Court and was not a modification," and was therefore proper under Ohio law. (ECF No. 6-1, Exhibit 18).

**B.  <u>Direct Appeal</u>**

On February 25, 2020, Mr. Al-Zerjawi, acting *pro se*, filed a notice of appeal to the Ninth District Court of Appeals from the trial court's April 10, 2015 *nunc pro tunc* order. (ECF No. 6-1, Exhibit 19). Mr. Al-Zerjawi also filed a motion for leave to file a delayed appeal. (ECF No. 6-1, Exhibit 20). Also on February 25, 2020, Mr. Al-Zerjawi timely filed a notice of appeal from the trial court's April 10, 2020 order denying his motion to vacate the *nunc pro tunc* order. (ECF No. 6-1, Exhibit 21). On April 1, 2020, the Ninth Appellate District granted Mr. Al-Zerjawi's motion for leave to file a delayed appeal and consolidated the two appeals. (ECF No. 6-1, Exhibit 31).

On March 12, 2020, Mr. Al-Zerjawi, acting *pro se*, filed a motion to prepare a statement of the evidence pursuant to Ohio Appellate Rule 9(C), stating that a transcript of the February 5, 2007 sentencing hearing could not be prepared because the original recording was no longer available. (ECF No. 6-1, Exhibit 22). Mr. Al-Zerjawi's proposed statement of the evidence stated, among other things, that the original trial judge intended to give Mr. Al-Zerjawi a 12-year prison sentence. *Id*. On March 27, 2020, Mr. Al-Zerjawi filed a motion for settlement and approval of his proposed statement, asserting that the State had not raised any specific objections to his statement of the evidence and that the court should adopt it. (ECF No. 6-1, Exhibit 25). On March 31, 2020, the Ninth Appellate District issued a magistrate's order, stating that Mr. Al-Zerjawi's motion must be brought before the trial court. (ECF No. 6-1, Exhibit 26). The court struck Mr. Al-Zerjawi's motion from the appellate docket and ordered the clerk to forward it to the trial court. *Id*.

On August 19, 2020, the trial court ruled on Mr. Al-Zerjawi's motion. (ECF No. 6-1, Exhibit 29). The court stated that it was "clear from the record that a recording or transcription of the relevant sentencing hearing no longer exists." *Id*. The court also noted that "the Judge

who handled the original sentencing is retired and no longer serving on the bench." *Id*. Thus, "having no personal knowledge of any statements made during the sentencing," the trial judge determined that she could not attest to all the facts that Mr. Al-Zerjawi had submitted. *Id*. Instead, the trial court approved a statement only that "[t]he calculation of total years to be served is not specifically stated in the journal entry – rather each count is sentenced separately and some counts were ordered merged, some to be served concurrently, and some to be served consecutively." *Id*.

On August 31, 2020, Mr. Al-Zerjawi, through counsel, filed his appellate brief, raising the following assignment of error:

1. The trial court committed reversible and plain error in issuing a nunc pro tunc sentencing journal entry.

(ECF No. 6-1, Exhibit 32).

On June 30, 2021, the Ninth Appellate District affirmed. (ECF No. 6-1, Exhibit 34). On August 9, 2021, Mr. Al-Zerjawi, acting *pro se*, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 6-1, Exhibit 35). In his memorandum in support of jurisdiction, Mr. Al-Zerjawi raised the following propositions of law:

1. The Appellate Court erred in its determination of if the trial court committed reversible and plain error in issuing a nunc pro tunc sentencing journal entry.

2. Appellate Counsel was ineffective for not arguing that the Appellant had a clear Expectation of Finality in his sentence and not respecting that expectation violates appellant's Due Process Rights.

(ECF No. 6-1, Exhibit 36). On September 28, 2021, the Ohio Supreme Court declined to accept jurisdiction of the appeal, with two justices dissenting. (ECF No. 6-1, Exhibit 38; *State v. Al-Zerjawi*, No. 2021-0982, 164 Ohio St. 3d 1449, 2021 WL 4443118 (Sept. 28, 2021)).

7

**C.  Federal Habeas Action**

On November 5, 2021, Mr. Al-Zerjawi, acting *pro se*, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Al-Zerjawi's habeas petition raises two grounds for relief:

1.  Both the Ohio trial court and Appellate Court erred in its determination of if the trial court committed reversible and plain error in issuing a nunc pro tunc sentencing journal entry violating the Double Jeopardy Clause and the Fifth Amendment.

2.  Appellate Counsel was ineffective for not arguing that the Petitioner had a clear Expectation of Finality in his sentence and not respecting that expectation violates his Due Process Rights.

*Id*. The Warden filed an answer/return of writ on January 18, 2022. (ECF No. 6). Mr. Al-Zerjawi filed his traverse on April 21, 2022. (ECF No. 14). In his traverse, Mr. Al-Zerjawi stated that he was scheduled to be released from prison on July 24, 2023. (ECF No. 14-1, PageID # 323). The Warden filed a reply on April 28, 2022. (ECF No. 15). On May 18, 2022, Mr. Al-Zerjawi filed a response to the Warden's reply. (ECF No. 16). The Warden filed a motion to strike the response (ECF No. 17), which I granted on September 15, 2022 (ECF No. 20).

On November 23, 2022, Mr. Al-Zerjawi filed a motion to forego magistrate's review (ECF No. 21), which I denied on December 1, 2022. (*See* ECF non-document entry dated December 1, 2022). On May 22, 2023, Mr. Al-Zerjawi filed a motion for summary judgment. (ECF No. 24). On December 15, 2023, I issued a report and recommendation recommending that the Court deny Mr. Al-Zerjawi's motion. (ECF No. 27). On January 8, 2024, the Court adopted the report and recommendation and denied Mr. Al-Zerjawi's motion for summary judgment. (ECF No. 28).

On July 10, 2023, Mr. Al-Zerjawi filed a notice of change of address, stating that he no longer resided at Mansfield Correctional Institution. (ECF No. 26). On January 8, 2024, a

copy of the Court's memorandum opinion and order denying Mr. Al-Zerjawi's motion for summary judgment was mailed to Mr. Al-Zerjawi at his last known address. (*See* ECF non-document entry dated January 8, 2024). On January 17, 2024, it was returned as undeliverable because Mr. Al-Zerjawi was no longer located at that address. (ECF No. 29). On April 16, 2024, I issued an order requiring Mr. Al-Zerjawi to file a notice of change of address by June 1, 2024. (*See* ECF non-document entry dated April 16, 2024). I also advised Mr. Al-Zerjawi that failure to do so might result in dismissal for want of prosecution pursuant to Federal Rule of Civil Procedure 41(b). Mr. Al-Zerjawi did not file a notice of change of address by June 1, 2024, and has not filed a notice of change of address to date.

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Summit County Court of Common Pleas sentenced Mr. Al-Zerjawi, and the Court takes judicial notice that Summit County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Al-Zerjawi's § 2254 petition.

### B. <u>Exhaustion and Procedural Default</u>

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509

(1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a

10

state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v.*

*Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

**D.  AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We

think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable

merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

### A. <u>Mootness</u>

There is a threshold issue that neither party has raised—namely, whether Mr. Al-Zerjawi's petition is moot because it appears that he has been released from prison and has thus served the challenged portion of his sentence.

Article III of the United States Constitution provides that the judicial power shall extend to all "cases" and "controversies." U.S. CONST. art. III, § 2; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("Article III confines the federal judicial power to the

resolution of 'Cases' and 'Controversies.'"). "If the plaintiff does not claim to have suffered an injury that the defendant caused and that the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion*, 594 U.S. at 423 (quotations omitted). "'[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.'" *Kuljko v. Bayless*, No. 4:20CV0994, 2022 WL 1912311, at *3 (N.D. Ohio June 3, 2022) (Pearson, J.) (quoting *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 794 (6th Cir, 2015)).

"It is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'" *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) (per curiam) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). "In criminal cases, this requirement means that a defendant wishing to continue his appeals after the expiration of his sentence must suffer some 'continuing injury' or 'collateral consequence' sufficient to satisfy Article III." *Id.*

A court may "presume that a wrongful criminal conviction has continuing collateral consequences." *Spencer v. Kemna*, 523 U.S. 1, 8 (1998). However, "the rule is different where a habeas petitioner is attacking his sentence rather than his conviction." *Arimont v. Adult Parole Auth.*, No. 1:19CV2584, 2021 WL 5496163, at *3 (N.D. Ohio Oct. 18, 2021), *report and recommendation adopted*, 2021 WL 5495081 (N.D. Ohio Nov. 23, 2021). "[W]hen a defendant challenges only an expired *sentence*, no such presumption applies, and the defendant must bear the burden of identifying some ongoing 'collateral consequenc[e]' that is 'traceable' to the challenged portion of the sentence and 'likely to be redressed by a favorable judicial decision.'" *Juvenile Male*, 564 U.S. at 936 (quoting *Spencer*, 523 U.S. at

15

7). That is because "[n]ullification of a conviction may have important benefits for a defendant . . . but urging in a habeas corpus proceeding the correction of a sentence already served is another matter." *North Carolina v. Rice*, 404 U.S. 244, 248 (1971).

Mr. Al-Zerjawi is not challenging his underlying conviction, but rather only whether the trial court violated his constitutional rights by entering a *nunc pro tunc* entry providing that he would serve his sentences for attempted murder consecutively, which, he claims, retroactively added an additional five years to his sentence. It appears clear from the record that Mr. Al-Zerjawi has been released from prison and has thus already served the challenged portion of his sentence. He was sentenced to 17 years in prison on February 5, 2007, more than 17 years ago. (ECF No. 6-1, Exhibits 9, 12). In his traverse, Mr. Al-Zerjawi stated that he was scheduled to be released from prison on July 24, 2023. (ECF No. 14-1, PageID # 323). Neither party has filed anything with the Court indicating that Mr. Al-Zerjawi's release was delayed, and he is not currently listed in the Ohio Department of Rehabilitation and Correction's database of offenders who are currently incarcerated or subject to post-release control. *See* https://appgateway.drc.ohio.gov/OffenderSearch/Search (last accessed June 26, 2024). In addition, Mr. Al-Zerjawi filed a notice of change of address on July 10, 2023, stating that he no longer resided at Mansfield Correctional Institution. (ECF No. 26).

As a result, it appears highly likely that Mr. Al-Zerjawi has been released from prison. However, the Warden has not raised the issue, and neither party has definitively informed the Court whether Mr. Al-Zerjawi remains in custody. Nor has Mr. Al-Zerjawi had an opportunity to argue that he is continuing to suffer from any collateral consequences as a result of serving consecutive sentences. Given the lack of clarity on the issue, and because I conclude that Mr. Al-Zerjawi's petition should be dismissed and/or denied on other grounds, I recommend that

16

the Court decline to dismiss Mr. Al-Zerjawi's petition on mootness grounds.

### B. **Ground One: Double Jeopardy Clause**

In his first ground for relief, Mr. Al-Zerjawi asserts that the trial court's entry of the *nunc pro tunc* order violated his rights under the Double Jeopardy Clause of the Fifth Amendment. The Warden responds that Mr. Al-Zerjawi procedurally defaulted on his claim and that the claim fails on the merits. I agree with the Warden on both arguments.

#### *1. Procedural Default*

The Warden first argues that Mr. Al-Zerjawi procedurally defaulted on his double jeopardy claim because he did not fairly present it as a federal constitutional claim at all levels of the state court review process. "[F]ederal courts ordinarily may not 'consider a claim in a *habeas* petition that was not "fairly presented" to the state courts' absent cause and prejudice to excuse the procedural default." *Nian v. Warden, N. Cent. Corr. Inst*., 994 F.3d 746, 751 (6th Cir. 2021) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). "[I]t does not suffice to only present the claim to a state trial court; rather, the petitioner must raise the claim in state court and 'pursue [it] through the state's ordinary appellate review procedures." *Id*. at 751-52 (quoting *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009)).

"To determine whether a petitioner has fairly presented a claim in state court, [a court] ask[s] whether the petitioner: (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law." *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017). "While a petitioner need not cite 'chapter and verse' of constitutional law, 'general allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were

violated.'" *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (quoting *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)).

As the Warden argues, while Mr. Al-Zerjawi did challenge the trial court's entry of the *nunc pro tunc* order in his appeal to the Ninth Appellate District, he presented his argument purely as a question of Ohio procedure, rather than federal constitutional law. In particular, Mr. Al-Zerjawi argued that the trial court's *nunc pro tunc* order was not proper under Ohio Crim.R. 36 because the *nunc pro tunc* order did not fix a clerical error but instead substantively changed his sentence to effectuate the trial court's purported "intent" in issuing the original sentencing order. (ECF No. 6-1, Exhibit 32). Mr. Al-Zerjawi also argued that there was a statutory presumption under Ohio law in favor of concurrent sentences for most felony offenses. *Id*. Mr. Al-Zerjawi raised the same arguments in his appeal to the Ohio Supreme Court, again relying exclusively on Ohio state law. (ECF No. 6-1, Exhibit 36). Mr. Al-Zerjawi thus did not fairly present his federal constitutional claim to the state appellate courts. And because the time for him to do so has long since expired, he has procedurally defaulted on the claim. *See Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review").

Mr. Al-Zerjawi's procedural default can nonetheless be excused if he can demonstrate either both cause and prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. In his traverse, Mr. Al-Zerjawi argues that his procedural default should be excused under § 2254(b)(1)(B), which provides in relevant part that a petitioner's failure to exhaust a claim will be excused where "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C.

18

2254(b)(1)(B)(ii). However, the issue here is procedural default, not exhaustion, and the two concepts are "distinct." *Williams*, 460 F.3d at 806 *see also Engle*, 456 U.S. at 125 n.28; *Alley*, 307 F.3d at 385. Thus, § 2254(b)(1)(B) cannot operate to excuse Mr. Al-Zerjawi's procedural default. *See Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 225 n. 2 (6th Cir. 2019) (rejecting argument that § 2254(b)(1)(B)(ii) excused procedural default because "exhaustion and procedural default . . . are distinct concepts" and § 2254(b)(1)(B)(ii) does not excuse procedural default where state procedural rule would now bar petitioner from exhausting claim in state court) (quoting *Williams*, 460 F.3d at 806).

Regardless, Mr. Al-Zerjawi has not met the standards of § 2254(b)(1)(B)(ii). Under that provision, "exhaustion is required unless an event beyond the petitioner's control makes the state court process incapable of resolving the petitioner's claim." *Johnson v. Bauman*, 27 F.4th 384, 389 (6th Cir. 2022). § 2254(b)(1)(B)(ii) is "applied only sparingly, and in extraordinary circumstances." *Roberts v. Gansheimer*, No. 1:08 CV 1473, 2011 WL 3652430, at *4 (N.D. Ohio Aug. 19, 2011).

Mr. Al-Zerjawi argues that his failure to exhaust should be excused under § 2254(b)(1)(B)(ii) because (1) the Summit County Court of Common Pleas destroyed the transcript of his sentencing hearing after ten years, leaving the state courts incapable of adjudicating his claim; (2) state courts have been hostile to arguments that *nunc pro tunc* orders of this kind are improper; and (3) the trial judge who entered the *nunc pro tunc* order was biased against him and was later appointed as a judge on the Ninth Appellate District. Even if true, however, those arguments do not demonstrate that the Ohio state courts would have been incapable of resolving Mr. Al-Zerjawi's double jeopardy claim had he raised it during the direct appeal process. To the contrary, the Ninth Appellate District fully

19

adjudicated the argument that Mr. Al-Zerjawi did raise with respect to the *nunc pro tunc* order. Mr. Al-Zerjawi thus has not established that he was prevented from presenting his claim as a federal constitutional claim during the state court review process. Nor has he argued that his procedural default should be excused on any other basis.[1] I therefore recommend that the Court dismiss his first ground for relief as procedurally defaulted.

### 2. *Merits*

Alternatively, I recommend that the Court deny Mr. Al-Zerjawi's first ground for relief on the merits because he has not established that entry of the *nunc pro tunc* order violated his constitutional rights.

The Double Jeopardy Clause of the Fifth Amendment provides in relevant part that "[n]o person . . . shall be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Double Jeopardy Clause protects "against a second prosecution for the same offense after acquittal," "against a second prosecution for the same offense after conviction," and "against multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

Mr. Al-Zerjawi argues that the *nunc pro tunc* order violated the Double Jeopardy Clause because it increased his sentence from 12 years to 17 years after his sentence had been imposed and years after he began serving it. Analysis of Mr. Al-Zerjawi's argument "must

---

[1] Mr. Al-Zerjawi has asserted an ineffective assistance of appellate counsel claim in his second ground for relief. Ineffective assistance of appellate counsel can constitute a basis to excuse a procedural default in some circumstances. *See Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). However, Mr. Al-Zerjawi has not argued that his procedural default should be excused on that basis. Regardless, ineffective assistance cannot constitute cause to excuse a procedural default if the ineffective assistance claim is itself procedurally defaulted, which it is here, as discussed below. *Id.* Moreover, as also set forth below, Mr. Al-Zerjawi's ineffective assistance of appellate counsel claim fails on the merits. Thus, even if Mr. Al-Zerjawi had argued that ineffective assistance of appellate counsel excused his procedural default, his argument would be without merit.

begin with an understanding of the nature and legal effect of a *nunc pro tunc* order in Ohio courts on a subsequent claim of double jeopardy." *Lashley v. Sloan*, No. 4:17 CV 1645, 2018 WL 4189545, at *2 (N.D. Ohio Jan. 30, 2018), *report and recommendation adopted*, 2018 WL 4184724 (N.D. Ohio Aug. 31, 2018). In particular, "Ohio law states that the appropriate remedy for a clerical mistake in a judgment is a *nunc pro tunc* entry, which entries are limited to accurately reflecting 'what the court actually decided' in the first place." *Id*. (quoting *Dukles v. Chuvalas*, No. 1:15 CV 2164, 2017 WL 3447830, at *12 (N.D. Ohio July 5, 2017), *report and recommendation adopted*, 2017 WL 3438552 (N.D. Ohio Aug. 10, 2017)).

The Ninth Appellate District held the trial court's *nunc pro tunc* order was proper here because it merely reflected what the trial court actually decided at the original sentencing hearing. As the court stated:

> {¶6} A trial court loses the authority to amend or modify a sentence once the sentence has been executed—or, in other words, once the defendant has been delivered to the institution where the sentence will be served. *State v. Carr*, 167 Ohio App.3d 223, 2006-Ohio-3073, ¶ 3 (3d Dist.). A sentence that has been executed can only be modified when the sentence itself is void or when a clerical error is present. *State v. Bellamy*, 181 Ohio App.3d 210, 2009-Ohio-888, ¶ 10 (2d Dist.). *See also State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, ¶ 23, overruled on other grounds, *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, ¶ 5, 18. In this case, the parties do not contend that the 2007 sentencing order was void. Our analysis, therefore, turns on whether the amendment made in 2015 corrected a clerical error.

> {¶7} Although the trial court did not specify that the amended order set forth an amendment nunc pro tunc, it appears that the trial court intended to act pursuant to Crim.R. 36, which permits a court to correct "[c]lerical mistakes in judgments * * * at any time." Nunc pro tunc orders function to make the record reflect the truth. *State v. Senz*, 9th Dist. Wayne No. 02CA0016, 2002-Ohio-6464, ¶ 12, *citing Reinbolt v. Reinbolt*, 112 Ohio St. 526, 532 (1925). Nunc pro tunc orders "are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided or what the court intended to decide." *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164 (1995). They cannot correct or modify an existing judgment. *Senz* at ¶ 12. When the record of sentencing clarifies what the trial court actually decided, clerical errors in a sentencing entry can be corrected through a nunc pro tunc entry. *See State v. Ibn-Ford*, 9th Dist. Summit No. 27380, 2015-Ohio-753, ¶ 8, citing *State v. Neumann-Boles*, 9th Dist. Medina No. 12CA0069-M, 2013-Ohio-3968, ¶ 8-10.

{¶8} Although Mr. Al-Zerjawi requested a transcript of proceedings from his sentencing hearing in 2007, that transcript is not available because the court reporter's record no longer exists. In conjunction with his appeal from the trial court's order denying his motion to vacate the amended order, Mr. Al-Zerjawi filed a statement of evidence pursuant to App.R. 9(C). The trial court's order adopting the App.R. 9(C) statement noted the practical difficulties inherent in settling and approving a statement of evidence in this case—namely, the turnover on the trial bench since Mr. Al-Zerjawi's conviction that resulted in multiple trial court judges presiding over his case and the unavailability of the sentencing transcript. In light of those challenges, the trial court adopted a statement of the evidence that merely restated what is apparent from the record. Consequently, the App.R. 9(C) statement is of limited usefulness in resolving the question presented. It is well established that this Court may presume regularity and affirm the trial court's judgment when an appellant fails to ensure that the record contains all that is necessary for our review. *State v. Jalwan*, 9th Dist. Medina No. 09CA0065-M, 2010-Ohio-3001, ¶ 12, citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). In this case, however, it is not necessary to resort to this presumption because Mr. Al-Zerjawi's argument fails based on the record before this Court.

{¶9} The State maintains that the 2007 sentencing order, on its face, required the sentences for counts one and two to be served consecutively. Consequently, the State's position is that the 2015 amendment was a nunc pro tunc order because it restated what the trial court had already decided—and, from the State's point of view, had already expressed.

{¶10} Mr. Al-Zerjawi was sentenced in 2007. At that time, as a result of the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, there was no statutory presumption in favor of concurrent sentences, and trial courts had the discretion to order consecutive sentences without judicial factfinding. *See generally State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 17-19; *State v. Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, ¶ 18. Thus, at the time of Mr. Al-Zerjawi's sentencing, the common-law presumption in favor of consecutive sentences was reinstated. *See Olmsted Falls v. Clifford*, 8th Dist. Cuyahoga No. 100375, 2014-Ohio-2397, ¶ 10; *State v. Johnson*, 8th Dist. Cuyahoga No. 93004, 2010-Ohio-2214, ¶ 7, fn 3. *See generally State ex rel. Stratton v. Maxwell*, 175 Ohio St. 65, 67 (1963) ("[I]n the absence of an affirmative act by the court multiple sentences run consecutively and not concurrently."). *Compare State v. Butcher*, 4th Dist. Meigs No. 14CA7, 2015-Ohio-4249, ¶ 26 (considering ambiguity in the context of felony sentences under current law).

{¶11} The fact that the trial court emphasized that a five-year term was imposed on each of the two counts, standing alone, is not dispositive: individual prison terms are required for each offense, whether they are to be served concurrently or consecutively. *See generally State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, paragraph two of the syllabus. Similarly, the trial court's emphasis on the consecutive nature of the corresponding firearm specifications does not speak to the sentences on counts one and two themselves. Nonetheless, at the time that Mr. Al-Zerjawi was sentenced, the

law presumed that sentences would be served consecutively unless the trial court made an affirmative decision to the contrary. Given this presumption, and the silence of the sentencing entry on this point, the trial court's 2015 amendment reflected what was actually decided in the 2007 sentencing order, and the nunc pro tunc amendment was appropriate. *See Steiner*, 74 Ohio St.3d at 164. To the extent that Mr. Al-Zerjawi's assignment of error argues, with respect to the delayed appeal, that the 2015 order must be vacated, his assignment of error is overruled on this basis. With respect to the appeal from the trial court's order that denied his motion to vacate, the trial court did not err, and Mr. Al-Zerjawi's assignment of error is also overruled on this basis.

(ECF No. 6-1, Exhibit 34) (footnotes omitted).

As an initial matter, I must defer to the Ninth Appellate District's holding that the nunc pro tunc entry was proper under Ohio law and that Ohio law contained a presumption in favor of consecutive sentences at the time of Mr. Al-Zerjawi's sentencing. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Dukles*, 2017 WL 3447830 at *13 ("Here, the Ohio Court of appeals determined that the trial court properly issued a *nunc pro tunc* entry to correct its misstatement and issued a verdict entry that reflected what the court had actually decided. This Court is bound by that decision.") (citation and quotations omitted).

And, because I must defer to the Ninth Appellate District's holding that the *nunc pro tunc* order merely reflected the trial court's original sentence, entry of the order did not violate the Double Jeopardy Clause. As the Sixth Circuit has held, "[a] nunc pro tunc judgment that merely 'correct[s] a record to accurately reflect the court's actions' or corrects a 'clerical error' is not 'a new sentence.' Reasonable jurists would therefore agree that the Double Jeopardy Clause is not implicated." *Lashley v. Sloan*, No. No. 18-4014, 2019 WL 5305497, at *2 (6th Cir. Feb. 19, 2019) (quoting *Crangle v. Kelly*, 838 F.3d 673, 680 (6th Cir. 2016)); *see also Dukles*, 2017 WL 3447830 at *11-14 (holding that issuance of *nunc pro tunc* order to correct sentencing entry did not violate Double Jeopardy Clause); *Persinger v. Warden,*

23

*Marion Corr. Inst.*, No. 2:20-CV-01577, 2020 WL 1930643, at \*5 (S.D. Ohio Apr. 21, 2020), *report and recommendation adopted*, 202 WL 2571891 (S.D. Ohio May 21, 2020) ("Petitioner's corrected sentence in the nunc pro tunc entry does not violate the Double Jeopardy Clause"). Accordingly, I alternatively recommend that the Court deny Mr. Al-Zerjawi's first ground for relief on the merits.

### C. Ground Two: Ineffective Assistance of Appellate Counsel

In his second ground for relief, Mr. Al-Zerjawi asserts that he received the ineffective assistance of appellate counsel because his appellate counsel failed to argue that the *nunc pro tunc* order violated his rights under the Double Jeopardy Clause. The Warden argues both that Mr. Al-Zerjawi's claim is procedurally defaulted and that it fails on the merits. The Warden is correct on both arguments.

#### 1. Procedural Default

As noted above, a petitioner fails to exhaust a claim if the petitioner does not present the claim at all levels of the state court review process. The Warden argues that Mr. Al-Zerjawi procedurally defaulted on his ineffective assistance of appellate counsel claim because he never properly presented the claim to the Ninth Appellate District. Rather, as the Warden notes, Mr. Al-Zerjawi presented an ineffective assistance of appellate counsel claim only in his memorandum in support of jurisdiction to the Ohio Supreme Court. (ECF No. 6-1, Exhibit 36). He did not file a motion in the Ninth Appellate District for leave to reopen his appeal under Ohio Appellate Rule 26(B), the alternative method through which Ohio defendants can raise an ineffective assistance of appellate counsel claim. *See* Ohio Appellate Rule 26(B)(1); *Goldberg v. Maloney*, 692 F.3d 534, 537 (6th Cir. 2012) (noting that Rule 26(B) "offers defendants 'a separate collateral opportunity' to raise ineffective assistance claims subsequent to a direct appeal") (quoting *Morgan v. Eads*, 104 Ohio St. 3d 142, 143

(2004)).

The Ohio Supreme Court declined to exercise jurisdiction over Mr. Al-Zerjawi's appeal without addressing the merits of his ineffective assistance of appellate counsel claim. (ECF No. 6-1, Exhibit 38). As the Warden correctly notes, the Sixth Circuit has held that "raising a claim for ineffective assistance of appellate counsel in a discretionary appeal to the Ohio Supreme Court, without addressing the claim through Ohio Appellate Rule 26(B), does not satisfy the exhaustion requirement unless the Ohio Supreme Court addresses the issue on the merits." *See Goldberg*, 692 F.3d at 538. Because Mr. Al-Zerjawi did not file a Rule 26(B) application and because the Ohio Supreme Court did not address the merits of his ineffective assistance claim, he did not fairly present his claim to the Ohio courts. And, because he does not dispute that the time for him to do so has expired, he has procedurally defaulted on that claim as well. *See Alley*, 307 F.3d at 385.

For the reasons set forth above with respect to his first ground for relief, Mr. Al-Zerjawi has not established that his procedural default should be excused under § 2254(b)(1)(B) or any other basis. Mr. Al-Zerjawi also argues in his traverse that his procedural default should be excused because a Rule 26(B) application likely would not have been adjudicated prior to his July 2023 release date. However, "an imminent release date has . . . been found to be insufficient grounds to excuse exhaustion." *Stanley v. Miller*, No. 15-cv-1576, 2018 WL 973921, at *4 (N.D. Ohio Feb. 20, 2018). I therefore recommend that the Court dismiss Mr. Al-Zerjawi's second ground for relief as procedurally defaulted.

### 2. Merits

Alternatively, I recommend that the Court deny Mr. Al-Zerjawi's ineffective assistance of appellate counsel claim on the merits.

The right to effective assistance of counsel extends through the first appeal as of right.

*Evitts v. Lucey*, 469 U.S. 387, 393-94 (1985). A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Under the first prong, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The *Strickland* standard is "extremely deferential" because "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision.'" *Id*. (quoting *Strickland*, 466 U.S. at 687).

Mr. Al-Zerjawi argues that his appellate counsel was ineffective in failing to argue that the *nunc pro tunc* order was a violation of the Double Jeopardy Clause. It is well-settled that "the *Strickland* performance standard does not require an attorney to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most a few

key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Indeed, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52). Thus, to show that appellate counsel was ineffective in raising one argument over another, "the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver*, 349 F.3d at 348 (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)).

Mr. Al-Zerjawi has not met that burden here. Rather, as set forth above, the Ninth Appellate District determined that the *nunc pro tunc* order merely reflected what the trial court originally decided rather than imposing a new, longer sentence on Mr. Al-Zerjawi. (ECF No. 6-1, Exhibit 34). And, because the *nunc pro tunc* order merely corrected a mistake in the original sentencing order, no Double Jeopardy Clause violation occurred. Because Mr. Al-Zerjawi's Double Jeopardy Clause argument is without merit, he has not shown that it was clearly stronger than the arguments that appellate counsel did present. I thus recommend that the Court alternatively deny Mr. Al-Zerjawi's second ground for relief on the merits.

### D. <u>Failure to Prosecute</u>

Finally, I recommend in the alternative that the Court dismiss Mr. Al-Zerjawi's petition for failure to prosecute because he has not complied with my orders requiring him to update his current address.

"A federal trial court has authority to dismiss a case under Rule 41(b) of the Federal Rules of Civil Procedure because of a plaintiff's failure to prosecute his claims." *Lucas v. Farley,* No. 0:22-CV-10-REW-CJS, 2022 WL 4126656, at *2 (E.D. Ky. Aug. 4, 2022), *report and recommendation adopted*, 2022 WL 4125074 (E.D. Ky. Sept. 9, 2022). Specifically, Rule 41(b) provides:

(b) Involuntary Dismissal; Effect. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-31 (U.S. 1962) (holding the language in Rule 41(b) allowing for a party to move to dismiss for failure to prosecute did not implicitly abrogate the court's power to dismiss *sua sponte*).

The Supreme Court has recognized that "the power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Id.* at 629-30; *see also Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013) ("It is well settled that a district court has the authority to dismiss *sua sponte* a lawsuit for failure to prosecute.").

In determining whether a case should be dismissed for failure to prosecute under Rule 41(b), the Sixth Circuit has held that a court should consider the following four factors:

(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Rogers v. City of Warren*, 302 F. App'x 371, 376 (6th Cir. 2008) (quoting *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 589 (6th Cir. 2001)). A review of these factors leads to the conclusion that dismissal with prejudice is appropriate in this case.

As an initial matter, Mr. Al-Zerjawi failed to comply with the Court's Order to file a notice of change of address. Thus, he appears to have abandoned his case because "[s]uch refusal evidences a willful disregard of the Court's instruction." *Lucas,* 2022 WL 4126656, at *2. Courts within this district have concluded that dismissal is warranted where a habeas petitioner fails to keep the court updated regarding his change in address. *See, e.g., Johnson*

28

*v. Sloan*, No. 1:17-cv-1050, 2017 WL 7736384, at *3 (N.D. Ohio Oct. 10, 2017), *report and recommendation adopted*, 2018 WL 969927 (N.D. Ohio Feb. 20, 2018) (holding dismissal without prejudice was warranted when the petitioner failed to update his address and the court's prior order warned the petitioner that failure to do so may result in dismissal); *McClellan v. Mack*, No. 3:11CV1798, 2012 WL 4461520, at *4 (N.D. Ohio Feb. 23, 2012), *report and recommendation adopted*, 2012 WL 4461523 (N.D. Ohio Sept. 25, 2012). Accordingly, the first factor weighs in favor of dismissal here.

In applying the second factor, courts have found that "[w]hile the prejudice to [Respondent] at this point may be minimal, [he] ha[s] expended time and funds in defending this action, including preparation of a responsive pleading." *Lucas,* 2022 WL 4126656 at *3 (citing *White v. Bouchard*, No. 05-73718, 2008 WL 2216281, at *5 (E.D. Mich. May 27, 2008) ("[D]efendants cannot be expected to defend an action which plaintiff has apparently abandoned, not to mention the investment of time and resources to defend this case."). Even if clear prejudice was lacking, however, "the four factors set forth by the Sixth Circuit are indeed factors and not a checklist." *Johnson,* 2017 WL 773684, at *3.

Courts applying the third factor have recognized that it "involves an examination as to whether the non-complying party was warned that failure to cooperate could lead to dismissal." *Id.* As in *Johnson,* this factor is unmistakably present here, as the court's order of April 16, 2024, explicitly warned Mr. Al-Zerjawi that failure to file a notice of change of address with the Court "may result in dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b)." *See Lucas,* 2022 WL 4126656 at *3 (finding that the petitioner was "warned that he must immediately advise the Clerk's Office of any change in his mailing address," and that the result of failing to do so is that "the Court might rule

against you on a motion or dismiss your case"). Accordingly, this factor weighs in favor of dismissal.

Finally, the fourth factor looks to whether less drastic sanctions were imposed or considered. As the Supreme Court recognized in *Link*, "[t]he authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted." 370 U.S. at 629-30. Here, "no alternative sanction would protect the integrity of pre-trial procedures" because Mr. Al-Zerjawi's actions have indicated that he does not intend to further participate in his case. *Carter v. City of Memphis*, *Tenn*., 636 F.2d 159, 161 (6th Cir. 1980). Accordingly, dismissal of this case is warranted here, and I alternatively recommend that the Court dismiss Mr. Al-Zerjawi's petition on that basis.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].")." In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B. <u>Analysis</u>**

Mr. Al-Zerjawi has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

**VII. RECOMMENDATION**

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Al-Zerjawi's petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court not grant him a certificate of appealability.

Dated: June 27, 2024

*/s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

31

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same

argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, \*2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).